UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHARLES WINDHAM,                    )     Case No. CV 13-3004-SVW (JEM)
                                    )
                 Plaintiff,         )
                                    )     MEMORANDUM AND ORDER
        v.                          )     DISMISSING FIRST AMENDED
                                    )     COMPLAINT WITH LEAVE TO AMEND
RONALD FRANKLIN, et al.,            )
                                    )
                 Defendants.        )
_____)

On May 23, 2013, Charles Windham ("Plaintiff"), proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").  On May 23, 2013, the Court dismissed the Complaint with leave to amend.[1]  Plaintiff filed a First Amended Complaint ("FAC") on November 4, 2013.

### SCREENING STANDARDS

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the FAC before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  This screening is governed by the following standards:

---

[1] The Complaint was dismissed because it did not state Plaintiff's true name.  Docket No. 7.

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'"  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable.  Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility.  Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,

1   <u>pro se</u> litigants are generally entitled to a notice of a complaint's deficiencies and an

2   opportunity to amend prior to the dismissal of an action.  <u>Lucas v. Dept. of Corrections</u>, 66

3   F.3d 245, 248 (9th Cir. 1995) (per curiam); <u>see also</u> <u>Karim-Panahi</u>, 839 F.2d at 623.  Only if

4   it is absolutely clear that the deficiencies cannot be cured by amendment should the

5   complaint be dismissed without leave to amend.  <u>Id.</u> at 623; <u>see also</u> <u>Cato v. United States</u>,

6   70 F.3d 1103, 1106 (9th Cir. 1995); <u>McQuillon v. Schwarzenegger</u>, 369 F.3d 1091, 1099

7   (9th Cir. 2004) (where amendment would be futile, complaint may be dismissed without

8   leave to amend).

9        After careful review and consideration of the FAC under the relevant standards and

10  for the reasons discussed below, the Court finds that the FAC must be **DISMISSED WITH**

11  **LEAVE TO AMEND.**

12                               **PLAINTIFF'S ALLEGATIONS**

13       Plaintiff alleges the following in his FAC:

14       Between February 10, 2010 and April 1, 2012, Plaintiff was incarcerated in Lancaster

15  State Prison ("Lancaster").  On February 10, 2010 he was placed in the Administrative

16  Segregation Unit ("ASU") for non-adverse reasons.  FAC at 5.  On February 17, 2010

17  Defendants Enriquez, Franklin, and Spencer sought to house a "HMA gang member" in

18  Plaintiff's cell.  <u>Id.</u>  When Plaintiff refused out of concern for his safety, Franklin and Spencer

19  pepper-sprayed him.  <u>Id.</u>  Spencer also filed a "contrived" Rules Violation Report ("RVR")

20  against Plaintiff.  <u>Id.</u>  After Plaintiff was found guilty of violating prison rules by refusing the

21  cell mate assignment, Defendant Romero, tripped, kicked, and punched Plaintiff while he

22  was handcuffed.  <u>Id.</u>

23       On or about March 20, 2010, Defendants Morataya and Meza placed Ryan Ervin, a

24  white supremacist gang member, in Plaintiff's cell.  FAC at 6.  Ervin informed Plaintiff that

25  "the guards" had told him that Plaintiff was a child molester and a snitch and that they would

26  "have his back" if he were to rape and kill Plaintiff.  <u>Id.</u> at 7.  On March 31, 2010, Ervin

27  "doped" Plaintiff's coffee and sexually assaulted him "without Plaintiff's knowledge or

28  consent."  <u>Id.</u>

1    The following morning, April 1, 2010, Plaintiff told Doe 16 about the assault and

2    requested immediate medical attention.  FAC at 7.  When Doe 16 told the shift supervisor,

3    Franklin, about the assault, Franklin told Plaintiff that he was "crazy."  Id.  Plaintiff did not

4    receive medical attention.  Id.  Plaintiff then tried to commit suicide.  Id.

5    That afternoon, Franklin, Venegas, and Does 6 through 10 returned Ervin to Plaintiff's

6    cell.  FAC at 7.  When Plaintiff, "fearing for his life," attacked Ervin, the guards emptied two

7    large canisters of pepper spray on Plaintiff's partially naked body.  Id.  Venegas and Does 6

8    through 10 then violently removed Plaintiff from the cell, shoving and slamming him into

9    sharp metal food ports and locks, until they reached the showers.  Id. at 8.  Plaintiff

10   demanded to have DNA evidence of the sexual assault collected before any prison official

11   turned on the shower.  Id.  Franklin refused, telling Plaintiff "I run shit in here.  What I say

12   goes."  Id.  Plaintiff was subsequently forced to live inside the cell that had dried pepper

13   spray in it.  Id. at 11.

14   On May 3, 2010, Enriquez, Ramos, and Moran smashed Plaintiff's head into a metal

15   cage door and slammed him into doors and walls, causing severe pain in Plaintiff's right

16   shoulder.  FAC at 9.  A few days later, on May 7, 2010, Enriquez, Ramos, and Moran

17   grabbed and twisted Plaintiff's genitals while he was handcuffed.  Id.

18   Plaintiff sent the DNA evidence he collected from the assault to a federal judge, a

19   private attorney, and the Los Angeles District Attorney's Office "for prosecution purposes."

20   FAC at 16-17.  The District Attorney's Office forwarded the materials to the California

21   Department of Corrections and Rehabilitations, which forwarded the evidence to Lancaster's

22   Investigative Services Unit ("ISU").  Id. at 17-18.  Defendant Mebane, the ISU Investigator

23   assigned to the case, contacted Plaintiff on or about July 1, 2010.  Id. at 18.  Mebane and

24   Does 11 through 15 refused to keep Plaintiff informed about both the investigation and the

25   results of the DNA analysis.  Id. at 18-19.  Ultimately, Mebane and Does 11 through 15

26   declined to refer the matter for criminal prosecution.  Id. at 19.  In February 2011, Ramos,

27   Franklin, Buechter, and Frank tried to re-assign Ervin to Plaintiff's cell.  Id. at 22.

28

On six different occasions between February 20, 2010 and December 1, 2010, Buechter, Brown, Franklin, and Does 1 through 5 refused to provide Plaintiff with sufficient food, regular showers, a toothbrush, toothpaste, soap, toilet paper, appropriate clothing, linens, blankets, and a mattress.  FAC at 12, 37.  Beltran, Brown, Buechter, Frank, Franklin, Galapon, Harris, Maldonado, Montoya, Morataya, Pabon, Romero, Venegas, Volpert, Williams, Wood, and Does 6 through 10 also deprived Plaintiff of any exercise outside his cell for 730 days while he was in the ASU.  Id. at 11, 38.  "[A]ll Defendants except Does 11 through 15 and Assad" repeatedly confiscated and damaged Plaintiff's prescription eyeglasses.[2]  Id. at 12-13, 40.

On or about August 29, 2011, Enriquez, Franklin, Montoya, Pagan, Romero, and Does 6-10 brutally attacked Plaintiff causing "facial lacerations, bruised head and body, black eyes, lower back and neck pain, dizziness, migraine headaches, nausea, vomiting, and psychological terror and trauma."  FAC at 10.  Also on or about August 29, 2011, Enriquez, Ramos, and Moran smashed Plaintiff's head into a metal cage door, breaking his front teeth.  Id. at 13.  At around the same time, after enduring continuing "guard gang abuse" that kept him confined in the ASU, Plaintiff tried again to hang himself in his cell.  FAC at 8.  He was treated at Palmdale Medical Center.  FAC at 10.

At some point between February 10, 2010 and April 1, 2012, Brown, Buechter, and Franklin regularly left Plaintiff "hog-tied" on the cell floor for eight hours a day.  FAC at 33, 37.  Further, after two disciplinary hearings held between May 3, 2010 and April 1, 2012, "all guards" strangled Plaintiff into unconsciousness – once with a towel and once with a plastic trash bag.  Id. at 14.  During that same time frame, "all guards" applied choke holds that left Plaintiff unconscious.  FAC at 14.  Finally, "Defendants sexually harassed Plaintiff on multiple occasions by touching him on the buttocks and genital areas and by making numerous vulgar, profane, and sexually explicit gratuitous insults and comments."  FAC at 31.

---

[2]  Plaintiff refers to "all Defendants except . . . Assad," but there is no Defendant named Assad.

On or about March 1, 2012, Franklin, Harris, Mebane, Meza, Montoya, Moran, Morataya, Pagan, Ramos, Romero, Spencer, Venegas, Williams, Wood, and Does 6-10 took a series of actions to prevent Plaintiff from filing suit against them.  FAC at 10.  These actions included denying Plaintiff texts, stationary, postage, and access to legal databases. Id. at 10, 42.  In addition, at some point between February 10, 2010 and April 1, 2012, Harris and Franklin refused to escort Plaintiff to the law library, and "all [Lancaster] guard Defendants" read, censored, and destroyed Plaintiff's legal mail.  FAC at 12.

Plaintiff asserts that on various occasions Brown, Buechter, Enriquez, Franklin, Galapon, Harris, Morataya, Pabon, Ramos, Spencer, Venegas, and Wood wrote false RVRs, which allowed Brown, Buechter, Frank, Franklin, Galapon, Harris, and Maldonado to impose severe penalties on Plaintiff.  See generally FAC at 9, 19, 21, 22, 23.  By raising Plaintiff's "Classification Score," these false RVRS resulted in Plaintiff remaining in maximum security prison facilities rather than being moved to a medium security prison. FAC at 20.  He adds that "most" of the disciplinary hearings were held without him because he was "never" escorted to the hearings and therefore did not have an opportunity to defend himself against the false charges in the RVRs.  Id. at 21.

Franklin and Harris were ASU supervisors and refused to protect Plaintiff from the other defendants' misconduct.  FAC at 14.  On or about December 1, 2011, Franklin and Harris also refused to accept and follow up on Plaintiff's complaints regarding the "Green Wall" Prison Guard Gang's misconduct and his conditions of confinement.  Id. at 10-11, 14, 15, 24; see also id. at 14 (referring to the Green Wall Prison Guard Gang), id. at 21 (stating that all of the defendants except for Beard and Sullivan are members of the Green Wall Prison Guard Gang).  In general, Franklin, Harris, Warden Cash, Sullivan, and Does 1-5 refused to "timely and properly accept and process" Plaintiff's grievances and to return the materials he submitted with his grievances.  FAC at 14, 15, 24.

Plaintiff claims that Defendants (1) violated the Eighth Amendment by imposing unconstitutional conditions of confinement, using excessive force, and failing to protect him from substantial risks to his safety; (2) violated Due Process; and (3) violated the First

Amendment by preventing him from accessing the courts and also by retaliating against him for exercising his right to seek redress.[3]  Plaintiff seeks punitive and compensatory damages and declaratory and injunctive relief.  FAC at 1, 2, 49-50.

## DISCUSSION

Having reviewed the FAC pursuant to the standards set forth above, the Court has determined that the FAC does not withstand screening for the following reasons:

## I.   Plaintiff Has Failed to Plead Sufficient Facts to Show How Defendant Ascurate Participated In the Alleged Constitutional Violations

Liability under § 1983 arises upon a showing of personal participation by the defendant.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (per curiam).  There is no respondeat superior liability under section 1983.  Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984).  To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  A person deprives another of a constitutional right where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Id. at 743-44.

The FAC is devoid of any specific factual allegations that Defendant Ascurate engaged in any affirmative act, participated in another's affirmative act, or failed to perform an act that he was legally required to do that caused the deprivations of which Plaintiff

---

[3]  The Court construes Plaintiff's claim for "unconstitutional censorship and theft" as a claim that the Defendants violated Plaintiff's First Amendment right to access the courts because he asserts that the materials that were censored and stolen pertained to his legal proceedings.  See FAC at 47-48.

1    complains.  Thus, there is an insufficient causal connection between the constitutional

2    deprivations alleged and Defendant Ascurate.  Plaintiff may amend his complaint to allege

3    facts demonstrating how Defendant Ascurate is responsible for the alleged constitutional

4    deprivations in accordance with the requirements described herein.

5    **II.    Plaintiff Has Failed to Adequately State a Claim for Denial of Access to Courts**

6           Inmates have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S.

7    343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977).  To state a claim for a

8    violation of the right of access to the courts, a prisoner must allege conduct on the part of

9    the defendant that deprived him of access and show that he or she suffered from an actual

10   injury as a result of that deprivation.  Lewis, 518 U.S. at 351.  Actual injury means that the

11   prisoner's pursuit of a non-frivolous legal claim was hindered or prevented.  Id.  Specifically,

12   a plaintiff must show "'actual prejudice with respect to contemplated or existing litigation,

13   such as the inability to meet a filing deadline or to present a claim.'"  Nevada Dept. of

14   Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting Lewis, 518 U.S. at

15   349).

16          Thus, to state a claim for interference with the right of access to the courts, Plaintiff

17   must plead sufficient facts to show that prison officials actually frustrated or impeded his

18   ability to present a nonfrivolous claim or defense.  See Lewis, 518 U.S. at 352-53.  He also

19   must name the individual defendants involved and how they allegedly participated in the

20   constitutional deprivation.

21          Plaintiff states that Brown, Buechter, Enriquez, Franklin, Harris, Morataya, Pabon,

22   Ramos, Romero, Spencer, Venegas, Volpert, Montoya, Moran, Williams, Wood, and Does 1

23   through 10 "violated Plaintiff's First Amendment right to reasonable access to the courts . . .

24   by knowingly depriving him of the opportunity to timely file the instant (and other) court

25   actions against them (and other defendants); to access and use an adequate and

26   meaningful ASU law library; [and] to be free from their Green Wall State Prison Guard Gang

27   activities . . ."  FAC at 41.  He adds that "these Green Wall Defendants did knowingly and

28   willfully fail or refuse to provide Plaintiff with requested legal tools, texts, materials, legal

database work station access, and stationary supplies and writing implements and postage . . ."  FAC at 42; see also FAC at 10 (alleging that Franklin, Harris, Meza, Mebane, Moritaya, Montoya, Moran, Pagan, Ramos, Romero, Spencer, Venegas, Williams, Wood, and Does 6 through 10 prevented Plaintiff from initiating suits by refusing to provide requested tools, texts, materials, legal databases etc.).  However, he does not allege what specific actions each of these defendants took that frustrated or impeded his efforts.  In the absence of specific factual allegations, Plaintiff's sweeping assertion that all twenty-six of these defendants "knowingly depriv[ed] him of the opportunity to timely file" is vague and conclusory.  It is also unclear what actual injury Plaintiff suffered as a result of the defendants' alleged misconduct.  He states that their actions "hindered . . . Plaintiff's efforts to submit, file, and exhaust prerequisite nonjudicial remedies and to timely pursue his legal claims."  However, this statement does not identify a specific claim that was jeopardized by the defendants' actions nor explain how the defendants' actions put the viability of that claim in jeopardy.  Accordingly, Plaintiff has not stated a denial of access to courts claim.

If Plaintiff chooses to file a Second Amended Complaint, he should name the defendants who deprived him of access to the courts, specify precisely what actions each defendant took that precluded him from accessing the courts, and explain how each defendant's actions caused Plaintiff actual prejudice in either the existing litigation or other litigation that he contemplated pursuing.  Plaintiff must also identify the claims that were prejudiced and plead sufficient facts for the Court to find that each of those claims had "a reasonable basis in law or fact."  See Silva v. DiVittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).

**III.    Plaintiff Has Failed to Adequately State a First Amendment Retaliation Claim**

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  A viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and (4) the adverse action chilled the

1    inmate's exercise of his First Amendment rights and (5) did not reasonably advance a

2    legitimate penological purpose.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)

3    (quoting Rhodes, 408 F.3d at 567-68).  Plaintiff has the initial burden of proving that the

4    exercise of his First Amendment rights was a substantial or motivating factor behind

5    defendant's conduct.  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287

6    (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Further, as

7    with all claims under § 1983, Plaintiff must also name the individual defendants involved and

8    how they allegedly participated in the constitutional deprivation.

9           Here, Plaintiff asserts that "Defendants" violated Plaintiff's First Amendment to be

10   free from retaliation when they, inter alia: (1) deprived him of blankets, adequate food and

11   clothing, and personal hygiene materials; (2) deprived him of outdoor exercise; (3) used

12   excessive force against him; (4) failed to stop other guards' unlawful conduct; (5) sexually

13   harassed Plaintiff; (6) failed to protect Plaintiff from attacks by other inmates and Green Wall

14   Prison Guard Gang members; (7) prevented Plaintiff from aggrieving the conditions of his

15   confinement; (8) interfered with Plaintiff's legal mail; (9) denied Plaintiff access to the courts;

16   and (10) prevented him from receiving medical care.  FAC at 43-45.  However, Plaintiff does

17   not specify which defendants took these actions.  See generally id. at 10-11 (stating that

18   "they" refused to provide Plaintiff with hygiene materials, interfered with Plaintiff's legal

19   papers, threatened to harm and kill Plaintiff etc.).

20          Plaintiff then summarily asserts that "these actions were motivated by a desire to

21   punish Plaintiff for the exercise, or the attempted exercise, of a constitutional right," but he

22   neither specifies what actions he took that provoked this retaliation nor pleads any facts

23   from which the Court can infer that the Defendants' misconduct was motivated by Plaintiff's

24   exercise of a First Amendment right.  Accordingly, Plaintiff has not stated a First

25   Amendment retaliation claim.

26          If Plaintiff chooses to file a Second Amended Complaint, he should identify what

27   protected conduct he engaged in that led to the retaliation, name the defendants who

28   retaliated against him, specify the adverse action(s) that each defendant took in retaliation,

1    and explain why he believes each defendant's misconduct was intended as a response to

2    Plaintiff's exercise of a First Amendment right.  Moreover, Plaintiff's amended pleading

3    should contain allegations that the adverse actions at issue "would chill or silence a person

4    of ordinary firmness from future First Amendment activities[,]" Rhodes, 408 F.3d at 568-69

5    (internal quotation marks and citation omitted), and did not reasonably advance a legitimate

6    penological purpose.  Allegations of prison officials' misdeeds and allegations that Plaintiff

7    sought to engage in protected conduct are not sufficient by themselves to show retaliation

8    above the "speculative level."  See Twombly, 550 U.S. at 555; see also Brodheim, 584 F.3d

9    at 1269.

10   **IV.     Plaintiff Fails to State a Claim for the Failure to Protect Him From Assault**

11        Plaintiff claims that multiple Defendants violated his constitutional rights by failing to

12   protect him from assault by another inmate.   See FAC at 32.  Prison officials are required to

13   take reasonable measures to guarantee the safety of inmates and officials have a duty to

14   protect prisoners from violence.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).  To state

15   a claim for threats to safety or failure to protect, an inmate must allege facts to show that he

16   was incarcerated under conditions posing a substantial risk of harm and that prison officials

17   were "deliberately indifferent" to those risks.  Id. at 834.  To adequately allege deliberate

18   indifference, a plaintiff must set forth facts to support that a defendant knew of, but

19   disregarded, an excessive risk to inmate safety.  Id. at 837.  Specifically, the plaintiff must

20   show that the official was "aware of facts from which the inference could be drawn that a

21   substantial risk of serious harm exist[ed]," actually drew that inference, and failed to respond

22   reasonably to the risk.  Id. at 837, 844.  Accordingly, the mere fact that a prisoner

23   experienced a terrible injury does not mean that a prison official is liable for failure to

24   protect.  See id.

25        Here, Plaintiff asserts that Lancaster officials failed to protect him from assault when,

26   on or about March 20, 2010, Defendants Morataya and Meza placed Ryan Ervin, a known

27   white supremacist gang member, in Plaintiff's cell.  FAC at 6, 32.  "Plaintiff demanded that

28   Defendants remove this young physically imposing white supremacist gang member," but

1   they refused.  Id.  Ervin informed Plaintiff that "the guards" had told him that Plaintiff was a

2   child molester and a snitch and that they would "have his back" if he raped and killed

3   Plaintiff.  Id. at 7.

4         Plaintiff states that, on March 31, 2010, Ervin "doped" Plaintiff's coffee and sexually

5   assaulted him "without Plaintiff's knowledge or consent."  FAC at 7.  After Ervin left the cell

6   the following day, April 1, 2010, Plaintiff told Doe 16 about the assault and requested

7   immediate medical attention.  Id. at 7.  Doe 16 reported the assault to his shift supervisor,

8   Franklin, and Franklin told Plaintiff that he was "crazy."  Id.  Later that day, Franklin,

9   Venegas, and Does 6 through 10 returned Ervin to Plaintiff's cell.  Id. at  7.

10        Plaintiff's allegations are not sufficient to state a claim against Franklin, Meza,

11  Morataya, Venegas, Does 6 through 10, or Doe 16.  Plaintiff's allegations about Ervin's

12  "imposing" physical appearance, his gang affiliation, and Plaintiff's objections to rooming

13  with him do not, by themselves, provide a basis for inferring that the Defendants knew that

14  Ervin posed a threat to Plaintiff.[4]  See FAC at 6.  While Plaintiff told Doe 16, who in turn

15  informed Franklin, about the assault, this was after the fact and there is no allegation that

16  Doe 16, Franklin, or any other defendant, knew Ervin posed a serious threat to Plaintiff prior

17  to the assault.  Cf. Farmer, 511 U.S. at 847 (prison official is liable, only if, "he knows that

18  inmates face a substantial risk of serious harm and disregards that risk by failing to take

19  reasonable measures to abate it.").

20                  *        *        *        *        *

21        For the foregoing reasons, Plaintiff's FAC fails to state a failure to protect claim.  If

22  Plaintiff elects to file a Second Amended Complaint, he must allege sufficient facts to show

23  that Ervin's presence in his cell posed a substantial risk of harm to him and explain how

24  each defendant knew of and disregarded that risk.  See Farmer, 511 U.S. at 834, 837.  As

25  stated above, without more, Ervin's physical appearance, his gang affiliation, and Plaintiff's

26

27        [4]  It also appears from the Rules Violations Reports attached to the FAC that these defendants
28  may have had a reason to believe that Ervin would not pose a risk to Plaintiff because "according to
    all available records, both [Plaintiff] and Ervin were compatible to house together."  FAC, Exh. 6.

complaints about sharing a cell with him do not support the conclusion that each defendant knew about an excessive risk to Plaintiff's safety.  Lastly, Plaintiff must also show that each defendant failed to respond reasonably to that risk.  See Farmer, 511 U.S. at 844.

**V.      Plaintiff Fails to State an Eighth Amendment Claim For Excessive Force as to All Incidents Described in the FAC Except the May 7, 2010, Incident**

Plaintiff alleges that "Defendants" used excessive force against him in violation of the Eighth Amendment.  FAC at 27.  He states that the defendants responsible for this excessive use of force are Ascurate, Brown, Buechter, Enriquez, Frank, Franklin, Harris, Maldonado, Montoya, Moran, Morataya, Pagan, Pabon, Ramos, Romero, Spencer, Venegas, Volpert, Wood, and Does 6 through 10.  FAC at 28, 29.  First, Plaintiff contends that Enriquez and Spencer used excessive force when they pepper sprayed Plaintiff for refusing to share his cell with an HMA gang member.  FAC at 5.  Second, he alleges that Romero used excessive force when he tripped, kicked, and punched Plaintiff while he was handcuffed.  Id. at 5.  Third, he alleges that Venegas and Does 6 through 10 used excessive force when they shoved and slammed Plaintiff into "sharp metal food ports" after Plaintiff was pepper sprayed for attacking Ervin, the inmate accused of sexual assault.  Id. at  8.  Fourth, Plaintiff alleges that Enriquez, Moran, and Ramos used excessive force on May 3, 2010 when they smashed Plaintiff's head into a metal door and slammed him into doors and walls – causing pain in Plaintiff's right shoulder.  Id. at 9.  Fifth, Plaintiff alleges that Enriquez, Moran, and Ramos used excessive force on May 7, 2010 when they grabbed and twisted Plaintiff's genitals while he was handcuffed.  Id. at 9.  Sixth, Plaintiff alleges that Enriquez, Franklin, Montoya, Pagan, Romero, and Does 6 through 10 used excessive force on August 29, 2011 when they brutally beat Plaintiff to such an extent that he was left with facial lacerations, black eyes, lower back and neck pain, dizziness, migraine headaches, and nausea and vomiting.  Id. at 10.  Seventh, Plaintiff alleges that – on the same day – Enriquez, Moran, and Ramos smashed Plaintiff's face into a metal door and broke his top front teeth.  Id. at 13.  Eighth, Plaintiff alleges that Brown, Buechter, and Franklin placed him in the "hogtie" restraint for hours at a time.  Id. at 33.  Plaintiff presents other allegations of

excessive force, see e.g., FAC at 14 ("Defendants" wrapped a towel around Plaintiff's head and suffocated him into unconsciousness), but he does not link those acts to any specific defendants.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations and citation omitted). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a sufficiently culpable state of mind. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. at 834 (quoting Wilson, 501 U.S. at 302-303). However, where prison officials used force in response to an immediate disciplinary need, because of the risk of injury to inmates and prison employees, and because prison officials may not have time to reflect on the nature of their actions, the "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard, applies. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002); Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).

"[W]henever prison officials stand accused of excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). When determining whether the force is excessive, the court should look to the "extent of injury . . . , the need for application of force, the relationship between that need and the amount off force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. at 7 (quoting Whitley, 475 U.S. at 321). Although the Supreme Court has never required a showing that an emergency situation existed, "the

absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." Jordan, 986 F.2d at 1528 n.7 (9th Cir. 1993). Moreover, there is no need for a showing of a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry. See Hudson, 503 U.S. at 7-9; Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

"Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune of escaping without serious injury." Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175, 1178-79 (2010). This does not suggest that "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 1178 (internal quotations and citations omitted).

Here, Plaintiff's FAC is devoid of specific allegations that Defendants Ascurate, Morataya, Pabon, Volpert, and Wood personally participated in any act of excessive force. See Fayle, 607 F.2d at 862 (liability under § 1983 arises upon a showing of personal participation by the defendant); Johnson, 588 F.2d at 743 (A person deprives another of a constitutional right where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.").

Moreover, with respect to Defendants Frank, Harris, and Maldonado, Plaintiff summarily asserts that these defendants are responsible for the alleged acts of excessive force because they were supervisors who "were personally involved in the violation, established a policy that led to the violation, and were deliberately indifferent to the substantial risk that the subordinate guard gang member defendants would commit such

violations." FAC at 29.  However, this conclusory statement is insufficient to show personal participation.  Supervisory personnel generally are not liable under § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); Hansen v. Black, 885 F.2d 642, 645–46 (9th Cir. 1989).  A supervisory official may be liable under § 1983 only if the official was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Crowley, 734 F.3d at 977; Hansen, 885 F.2d at 646.  "[S]upervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010) (internal quotations and citation omitted).  Here, Plaintiff has not explained how Frank, Harris, and Maldonado were each involved in the acts of excessive force.  He has not demonstrated that any of these three defendants knew about the acts of excessive force, identified a particular policy that led to the use of excessive force, or explained what conduct they engaged in that showed a reckless or callous indifference to the rights of others.  See Edgerly, 599 F.3d at 961.

Plaintiff's FAC includes the following allegations of excessive force:  (i) on February 17, 2010, Franklin and Spencer pepper-sprayed Plaintiff after he "refused" a cell mate assignment, FAC at 5; (ii) Defendant Romero, tripped, kicked, and punched Plaintiff while he was handcuffed, FAC at 5; (iii) on May 3, 2010, Enriquez, Ramos, and Moran smashed Plaintiff's head into a metal cage door and slammed him into doors and walls, causing severe pain in Plaintiff's right shoulder, FAC at 9; (iv) on or about August 29, 2011, Enriquez, Franklin, Montoya, Pagan, Romero, and Does 6-10 brutally attacked Plaintiff causing "facial lacerations, bruised head and body, black eyes, lower back and neck pain, dizziness, migraine headaches, nausea, vomiting, and psychological terror and trauma[,]" FAC at 10; (v) on or about August 29, 2011, Enriquez, Ramos, and Moran smashed

16

Plaintiff's head into a metal cage door, breaking his front teeth, FAC at 13; and (vi) between February 10, 2010 and April 1, 2012, Brown, Buechter, and Franklin regularly left Plaintiff "hog-tied" on the cell floor for eight hours a day, FAC at 33, 37.  Nevertheless, without any specific factual allegations regarding Plaintiff's own actions at the time, Plaintiff has not alleged a plausible claim that these Defendants used force in each of the above-referenced incidents in order to cause him harm, rather than in a good faith effort to maintain discipline. See Hudson, 503 U.S. at 6-7.

Moreover, with respect to Plaintiff's allegation that Venegas and Does 6 through 10 violently removed Plaintiff from the cell, shoving and slamming him into sharp metal food ports and locks, Plaintiff concedes that he first attacked Ervin before Venegas and Does 6 through 10 committed the acts of which Plaintiff complains.  FAC at 8.  Based on Plaintiff's allegations, therefore, it appears that the force used against Plaintiff was done in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically to cause harm. Hudson, 503 U.S. at 6-7.

Liberally construed, Plaintiff's allegation that on May 7, 2010, Enriquez, Ramos, and Moran grabbed and twisted Plaintiff's genitals while he was handcuffed, FAC at 9, are sufficient at the screening stage to allege an excessive force claim against these Defendants for the May 7, 2010, incident.

For the foregoing reasons, Plaintiff fails to state an excessive force claim as to all incidents except the May 7, 2010, incident.  If Plaintiff chooses to file a Second Amended Complaint, he must name each defendant and specify how they each used excessive force against him.  Plaintiff shall state specific facts alleging that these Defendants used force in each of the above-referenced incidents (except for the May 7, 2010, incident) in order to cause him harm, rather than in a good faith effort to maintain discipline.  See Hudson, 503 U.S. at 6-7.  If he chooses to hold a supervisor liable for the acts of his subordinates, Plaintiff must plead sufficient facts to support the inference that the supervisor took culpable

actions – or inaction – in the training, supervision, or control of his subordinates or engaged in conduct that showed a reckless or callous indifference to the rights of others.

## VI.   Plaintiff Fails to State an Eighth Amendment Claim for Unconstitutional Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement." Farmer, 511 U.S. at 832.  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (citation omitted).

To establish that his conditions of confinement violated the Eighth Amendment, an inmate must make a two-part showing.  First, the inmate must objectively show that he was deprived of something "sufficiently serious." Farmer, 511 U.S. at 834.  A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

Second, the inmate must make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 302-03).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Id. at 835; Frost v. Agnos, 152 F.3d 1152, 1128 (9th Cir. 1998).  Instead, in order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. See, e.g., Farmer, 511 U.S. at 847.

In addition to Plaintiff's allegations of excessive force and failure to protect, Plaintiff presents two other claims for unconstitutional conditions of confinement.  First, he states that Buechter, Brown, Franklin, and Does 1 through 5 deprived Plaintiff of "soap, a

toothbrush, toothpaste, clean clothing and linen, a sanitary mattress, blankets, cold-cell clothing, regular showers, and 2,100 calories of 3 meals per day." FAC at 26. Second, he alleges that Beltran, Brown, Buechter, Enriquez, Frank, Franklin, Galapon, Harris, Maldonado, Montoya, Moran, Morataya, Pabon, Pagan, Ramos, Romero, Spencer, Venegas, Volpert, Williams, Wood, and Does 6 through 10 deprived him of outside exercise for 730 days. Id. at 27. However, Plaintiff does not provide sufficient factual detail against each defendant for his allegations to rise above the "speculative level." See Twombly, 550 U.S. at 555. Accordingly, Plaintiff fails to state a condition of confinement claim against these defendants.

If Plaintiff wishes to file a Second Amended Complaint, he should specify what each defendant did to deny Plaintiff humane conditions of confinement, not simply assert that a deprivation occurred and then accuse a group of defendants of being "responsible" for that deprivation. Plaintiff should also provide sufficient factual allegations to support the inference that the deprivation was serious. For example, the denial of a blanket or cold-cell clothing does not amount to a per se denial of "the minimal civilized measure of life's necessities," but may rise to this level under certain circumstances. Finally, Plaintiff must present sufficient factual allegations to support the inference that each defendant acted with deliberate indifference to Plaintiff's health or safety. As stated above, this is a higher standard than negligence or lack of ordinary due care.

**VII.   Plaintiff Does Not State A Claim For Denial Of Due Process**

First, Plaintiff alleges that Defendants' use of excessive force and their denial of humane conditions of confinement each amounted to a denial of Due Process. See FAC at 37-40. In effect, Plaintiff seeks to bring his conditions of confinement claims under both the Eighth and Fourteenth Amendments. See id. However, because Plaintiff is a state prisoner rather than a pretrial detainee, the Eighth Amendment is the primary source of substantive protection. See Whitley, 475 U.S. at 327 (explaining that in cases involving prison inmates, "the Due Process Clause affords . . . no greater protection than does the Cruel and Unusual

Punishments Clause"); see also Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979) ("Due Process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").  "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [Plaintiff's] claims."  County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (internal quotation marks, citation, and brackets omitted).  Accordingly, Plaintiff's claims challenging Defendants' use of excessive force and their denial of humane conditions of confinement are properly brought under the Eighth Amendment, rather than the Fourteenth Amendment.

Second, Plaintiff alleges that (1) Does 1 through 5 "deprive[d] him of an opportunity to aggrieve the conditions of his confinement,"[5] FAC at 38; see id. at 14, 24 (stating that he filed "dozens" of grievances and that Does 1 through 5 either "deliberately refused to return" them or responded with "a fabricated superficial record . . . created for the sole purpose of pulling the wool over any subsequent reviewer's eyes"), and that (2) Buechter, Brown, Harris, and Does 1 through 5 "knowingly and deliberately deprived Plaintiff of his protected/created liberty and property interests (without due process of law) and acted in an arbitrary and unfair manner when they imposed atypical and significant hardships on him[.]"  Id. at 39-40 (alleging that the conditions in the ASU, including the experience of being "hog-tied" for eight consecutive hours and the loss of his eyeglasses, are "significantly worse" than those imposed on the general population, and that Plaintiff's confinement in the ASU lasted twenty-six months).

"It is well-established that the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'"  Burnsworth v. Gunderson, 179 F.3d 771, 774 (9th Cir. 1999) (internal

---

[5]  However, Plaintiff does not identify a single specific instance when he filed, or tried to file, a grievance.

1    quotation marks, citation, and brackets omitted). In the prison context, the Supreme Court

2    has held that the Due Process Clause does not protect a prisoner's alleged liberty interest

3    where the hardship imposed "is within the normal limits or range of custody which the

4    conviction has authorized the State to impose."  See Meachum v. Fano, 427 U.S. 215, 225

5    (1976). Constitutionally protected liberty interests "will be generally limited to freedom from

6    restraint which, while not exceeding the sentence in such an unexpected manner as to give

7    rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical

8    and significant hardship on the inmate in relation to the ordinary incidents of prison life."

9    Sandin v. Connor, 515 U.S. 472, 483-84 (1995).  "If the hardship is sufficiently significant,

10   then the court must determine whether the procedures used to deprive that liberty satisfied

11   Due Process."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S.

12   1063 (2004) .

13        There is no single standard for determining whether a prison hardship is atypical and

14   significant, and "the condition or combination of conditions or factors requires case by case,

15   fact by fact consideration."  Id. at 861 (internal quotation marks, citation, and ellipsis

16   omitted).  The Court in Sandin relied on three factors in determining that the plaintiff

17   possessed no liberty interest in avoiding disciplinary segregation: "(1) disciplinary

18   segregation was essentially the same as discretionary forms of segregation; (2) a

19   comparison between the plaintiff's confinement and conditions in the general population

20   showed that the plaintiff suffered no 'major disruption in his environment'; and (3) the length

21   of the plaintiff's sentence was not affected."  Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir.

22   2000) (internal citation omitted).

23        As an initial matter, a state's inmate administrative appeal system does not implicate

24   a liberty interest protected by the Due Process Clause.  See Ramirez, 334 F.3d at 860

25   (holding that a prisoner has no separate constitutional right to a specific grievance or appeal

26   procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Buckley v. Barlow, 997 F.2d

27   494, 495 (8th Cir. 1993) ("A prison grievance procedure is a procedural right only, it does

28   not confer any substantive right upon the inmates.") (internal quotation marks, citation, and

1   brackets omitte); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); see also Shehee

2   v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles

3   involved the denial of the prisoner's administrative grievances cannot be held liable under §

4   1983), cert. denied, 530 U.S. 1264 (2000).  Accordingly, Plaintiff cannot state a claim that

5   his right to due process was violated by the manner in which Does 1 through 5 processed

6   his grievances.

7        Concerning Plaintiff's confinement in the ASU, moreover, Plaintiff has not pled

8   sufficient facts to show that each defendant personally participated in the alleged due

9   process deprivation by playing a part in causing Plaintiff's ASU segregation.  Furthermore,

10  Plaintiff has not alleged that his confinement in the ASU, whether administrative or

11  disciplinary, presented "the type of atypical, significant deprivation [that] might conceivably

12  create a liberty interest."  Sandin, 515 U.S. at 486.  In support of his allegation that

13  conditions in the ASU are "significantly worse" than those imposed on the general

14  population, Plaintiff states that he was "hog-tied" for eight consecutive hours and

15  experienced the loss of his eyeglasses.  FAC at 39-40.  However, Plaintiff's attempt to

16  recast his Eighth Amendment excessive force claim that he was "hog-tied" as a due process

17  claim must fail.  See Toussaint v. McCarthy, 801 F.2d 1080, 1093 (9th Cir. 1986), cert.

18  denied, 481 U.S. 1069 (1987), overruled on other grounds by Sandin (rejecting an inmate's

19  attempt to "parlay" his Eighth Amendment right into a due process right because, among

20  other things, doing so would imply that some "amount of process can justify subjecting a

21  prisoner to cruel and unusual punishment").  Moreover, Plaintiff's allegation concerning the

22  loss of his eyeglasses in the ASU does not support Plaintiff's claim that the conditions in the

23  ASU are "significantly worse" than those imposed on the general population.  FAC at 39-40.

24  Nor does it show that "the conditions in the [ASU], compared with conditions in the general

25  population, created 'a major disruption' in Plaintiff's environment."  Resnick, 213 F.3d at

26  448.  Plaintiff also does not allege that the conditions in the ASU are "materially different

27  from those conditions imposed on inmates in purely discretionary segregation[,]" id., and

28  there is no allegation that the length of Plaintiff's sentence was affected.  Finally, the length

1   of Plaintiff's confinement in the ASU – twenty-six months –  by itself does not create an

2   atypical and significant hardship in relation to the ordinary incidents of prison life.  See

3   Bonner v. Parke, 918 F.Supp. 1264, 1270 (N.D. Ind. 1996) ("[Plaintiff]'s placement in

4   disciplinary segregation for three years does not constitute an extreme term of segregation

5   and, by itself, does not create an atypical and significant hardship in relation to the ordinary

6   incidents of prison life.").[6]

7        Even assuming Plaintiff could show that he suffered conditions in the ASU amounting

8   to atypical and significant hardship in relation to the ordinary incidents of prison life, Plaintiff

9   does not allege that he was denied due process.  See, e.g., Tutor-Saliba Corp. v. City of

10  Hailey, 452 F.3d 1055, 1061 (9th Cir. 2006) ("To establish a violation of procedural due

11  process a plaintiff must demonstrate: (1) a deprivation of a constitutionally protected liberty

12  or property interest, and (2) a denial of adequate procedural protections.") (emphasis

13  added).

14                    *        *        *        *        *

15       Based on the foregoing, Plaintiff's allegations against Brown, Buechter, Harris, and

16  Does 1 through 5 fail to state a claim for violation of the Due Process Clause based on his

17  segregation in the ASU.  If Plaintiff elects to present this claim in a Second Amended

18  Complaint, he must plead sufficient facts to show that each defendant personally

19  participated in the alleged due process deprivation by playing a part in causing Plaintiff's

20  ASU segregation.  He should also present some explanation for why the hardships he

21  alleges are "atypical and significant" relative to ordinary prison life.  Finally, Plaintiff should

22  state specific facts alleging that he was denied the required procedural protections.  He is

23

24  _____

25       [6] To the extent Plaintiff alleges that Defendants' actions leading to his raised classification score
    violated due process, FAC at 20-23, Plaintiff also fails to state a claim under the Due Process
26  Clause.  See Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) ("[C]lassification of [plaintiff] at a
    'level IV' prison rather than at a 'level III' prison does not, on the record before us, present an
27  'atypical and significant hardship.'"); see, e.g., Voth v. Premo, 2014 WL 357122, at *1-*2 (D. Or.
    2014) (plaintiff did not state a due process claim based on allegations that defendants designated
28  him a security threat).

1  cautioned that in doing so, he should avoid conclusory statements and the formulaic

2  recitation of elements of a due process violation.  See Twombly, 550 U.S. at 555.

3      Plaintiff may not state a due process violation based on the manner in which Does 1

4  through 5 processed his grievances.

5      To the extent Plaintiff challenges Defendants' use of excessive force and their denial

6  of humane conditions of confinement, Plaintiff's allegations are properly brought under the

7  Eighth Amendment, rather than the Fourteenth Amendment.

8  **VIII.   Plaintiff Cannot State a Claim For Damages Against Defendants In Their**

9  **         Official Capacities**

10     The Supreme Court has held that an "official-capacity suit is, in all respects other

11 than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159,

12 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los

13 Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is not a suit against the official

14 personally, for the real party in interest is the entity." Graham, 473 U.S. at 159.  Here, all of

15 the Defendants are officers or agents of the California Department of Corrections and

16 Rehabilitation ("CDCR").  Accordingly, Plaintiff's claims against Defendants in their official

17 capacities are tantamount to claims against CDCR.

18     However, states, state agencies, and state officials sued in their official capacities are

19 not persons subject to civil rights claims for damages under 42 U.S.C. § 1983.  Will v.

20 Michigan Department of State Police, 491 U.S. 58, 64-66 (1989); see also Hafer v. Melo,

21 502 U.S. 21, 30 (1991) (clarifying that Eleventh Amendment does not bar suits against state

22 officials sued in their individual capacities, nor does it bar suits for prospective injunctive

23 relief against state officials sued in their official capacities).  CDCR is an agency of the State

24 of California and, therefore, entitled to Eleventh Amendment immunity.  Brown v. California

25 Department of Corrections, 554 F.3d 747, 752 (9th Cir. 2009).

26     To overcome the Eleventh Amendment bar on federal jurisdiction over suits by

27 individuals against a State and its instrumentalities, either the State must have

28 "unequivocally expressed" its consent to waive its sovereign immunity or Congress must

1  have abrogated it.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100

2  (1984).  California has consented to be sued in its own courts pursuant to the California Tort

3  Claims Act, but such consent does not constitute consent to suit in federal court.  See BV

4  Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also

5  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the

6  California Constitution did not constitute a waiver of California's Eleventh Amendment

7  immunity).  Furthermore, Congress has not abrogated State sovereign immunity against

8  suits under 42 U.S.C. § 1983.

9      Accordingly, Plaintiff's claims for money damages against the Defendants in their

10  official capacities are barred by the Eleventh Amendment.

11                          **CONCLUSION**

12      Based on the foregoing, IT IS ORDERED THAT:

13      1.    The FAC is **dismissed with leave to amend**.

14      2.    Plaintiff is granted leave to amend only the claims in his FAC.  Plaintiff may not

15  add additional claims or defendants without prior leave of court.  See Fed. R. Civ. P. 15(a).

16  If plaintiff still wishes to pursue this action, he is granted until **March 24, 2014**, to file a

17  Second Amended Complaint attempting to cure the defects in the FAC described herein.

18      3.    The Second Amended Complaint must be labeled "Second Amended

19  Complaint" and contain the case number assigned to the case, i.e., Case No. CV 13-3004-

20  SVW (JEM).  In addition, plaintiff is informed that the court cannot refer to a prior pleading in

21  order to make his Second Amended Complaint complete.  Local Rule 15-2 requires that an

22  amended pleading be complete in and of itself without reference to any prior pleading.  This

23  is because, as a general rule, an amended pleading supersedes the original pleading.  See

24  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), overruled in part, Lacey v. Maricopa County,

25  693 F.3d 896 (9th Cir. 2012) (en banc).

26      4.    Plaintiff must use and complete the Central District's "Civil Rights Complaint"

27  form for the Second Amended Complaint.  The Second Amended Complaint must comply

28  with Federal Rules of Civil Procedure 8 and 10, and with any and all instructions in the form

complaint.  In particular, plaintiff must follow the instruction to clearly state all important facts in support of his civil rights claims, and clearly describe what each defendant did to violate his civil rights.  (See Form Complaint at 5).  Any claim that is not clearly numbered or separated from all other claims will not be addressed as a separate claim for relief.  **Given his excessively lengthy FAC, the court will now require that any amended complaint plaintiff submits must not exceed thirty pages.**

5.    The Clerk is directed to send plaintiff a copy of the Central District's "Civil Rights Complaint" form.

6.    Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described herein, will result in a recommendation that this action be dismissed without prejudice for failure to prosecute and/or failure to comply with a court order.  See Link v. Wabash R.R. Co., 370 U.S. 626, 629-30 (1962); Fed. R. Civ. P. 41(b).


DATED: February 20, 2014                    _____/s/ John E. McDermott_____
                                                              JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE